UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DEVON A. PHILLIPS,

Plaintiffs,

v.

KERN COUNTY SHERIFF DEPARTMENT, *et al.*,

Defendants.

Case No. 1:25-cv-00875-CDB

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

(Doc. 32)

ORDER VACATING SCHEDULING CONFERENCE

**30-DAY DEADLINE**

On July 17, 2025, Plaintiff Devon Phillips initiated this action with the filing of a complaint. (Doc. 1). Plaintiff filed the first amended complaint (FAC") on August 7, 2025. (Doc. 16). On August 21, 2025, Defendants Kern County Sheriff's Office ("KCSO"), Deputy Fisher, Sergeant J. Perez, and Deputy Shin (collectively, "Defendants") filed a motion to dismiss the FAC. (Doc. 17). On February 11, 2026, the Court granted the motion with leave to amend. (Doc. 28). On March 6, 2026, Plaintiff filed the operative second amended complaint. (Doc. 29).

Pending before the Court[1] is the Defendants' motion to dismiss claims asserted in the operative second amended complaint ("SAC"). (Doc. 32). On March 27, 2026, Plaintiff filed an opposition and, on March 30, 2026, Defendants filed a reply. (Docs. 33, 34).

[1] Following all parties' expression of consent to the jurisdiction of a magistrate judge for all further proceedings in this action, including trial and entry of judgment, on October 21, 2025, this action was reassigned to the undersigned pursuant to 28 U.S.C. § 636(c)(1). (Doc. 26).

## I. Background

In the SAC, Plaintiff alleges that on April 11, 2025, at approximately 5:30 p.m., he was at 2659 Monterey Street, Bakersfield, doing "maintenance work, unarmed, and not the subject of a search warrant. Multiple unmarked vehicles arrived. Two armed, plain-clothed men [] emerged, failing to announce themselves as law enforcement." Plaintiff alleges that one of these men was Defendant Fisher. One of the armed men pointed a rifle at Plaintiff and shouted, "Tyree." The other armed individual, wearing a grey Los Angeles Dodgers hat and later determined to be Defendant Fisher, ran toward and pointed his weapon at Plaintiff and ordered him to the ground, despite Plaintiff's compliance with orders. (Doc. 29 at 4).

Defendant Fisher "violently handcuffed [P]laintiff," using a wrist lock, thereby exacerbating Plaintiff's pre-existing left shoulder injuries. Defendant Perez, a supervising officer, "actively assisted despite lack of resistance," and neither Defendant "provided or displayed any warrant." Defendant Shin searched Plaintiff's vehicle and seized property, namely a dashcam and a micro-SD card, "without a warrant or consent." None of said Defendants provided "an explanation for this search or the seizure." Plaintiff was detained in a patrol car, denied an explanation, and later released without charges. Plaintiff "immediately sought medical attention for aggravated injuries, and continues to require treatment and psychological counseling." *Id.*

## II. Governing Authority

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a plaintiff's complaint for failing "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983) (citing *Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981)). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009); *see* Fed. R. Civ. P. 8(a)(2) (a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief). A complaint satisfies the plausibility requirement if it contains sufficient facts for the court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all allegations put forth in the complaint and construe all facts and inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Hebbe v. Pliler*, 627 F.3d 338, 340 (9th Cir. 2010). The complaint need not include "detailed factual allegations," but must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted). And "even 'well-pleaded facts' are not sufficient if they are accompanied by only '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Gibson v. City of Portland*, 165F.4th 1265, 1287 (9th Cir. Jan. 2026) (quoting *Iqbal*, 556 U.S. at 678). The Court is "not 'required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)).

## III. Discussion

By their motion, Defendants seek dismissal of Plaintiff's municipal liability claims. *See* (Doc. 32).

As a preliminary matter, Plaintiff asserts in the SAC that he "re-alleges and incorporates by reference the factual allegations and claims set forth in the First Amended Complaint." (Doc. 29 at 2). Plaintiff was admonished by the Court in its order granting Defendants' earlier motion to dismiss the FAC and extending leave to file a SAC that he "must assert any factual allegations he wishes the Court to consider within the body of the [amended] complaint." (Doc. 28 at 11). This is because an amended complaint supersedes the original complaint. *Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir. 2012). And as set forth in the Local Rules of this Court, any amended

complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Accordingly, Plaintiff may not incorporate by reference in the SAC the contents of the FAC. The Court will proceed to evaluate the allegations specifically set forth in the SAC.

**A. Municipal Liability Claims**

***i. Legal Standard***

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* Local governments are responsible only for their own illegal acts; they are not vicariously liable for their employees' actions. *Connick v. Thompson*, 563 U.S. 51, 60 (2011).

A municipality is held liable only when "action pursuant to official municipal policy of some nature cause[s] a constitutional tort." *Monell*, 436 U.S. at 691. This "official municipal policy" need not be expressly adopted, "[i]t is sufficient that the constitutional violation occurred pursuant to a longstanding practice or custom." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) (citation and quotations omitted). A policy can also be one of action or inaction, such as a failure to train employees when such omissions amount to the government's policy. *See Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1189 (9th Cir. 2006) ("[A] county's lack of affirmative policies or procedures to guide employees can amount to deliberate indifference[.]").

Thus, to establish a § 1983 claim for municipal liability, Plaintiff must show: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation. *Burke v. County of Alameda*, 586 F.3d 725, 734 (9th Cir. 2009).

Courts in the Ninth Circuit use a two-part test to evaluate whether factual allegations regarding municipal liability are sufficiently pled: "First, to be entitled to the presumption of truth,

allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *A.E. ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

"Under Ninth Circuit precedent, [a] policy of inaction or omission may be based on failure to implement procedural safeguards to prevent constitutional violations. In an 'omission' action, a plaintiff must show the municipality's policy of inaction amounts to deliberate indifference to the plaintiff's constitutional right, and that the policy caused the violation, in the sense that the [municipality] could have prevented the violation with an appropriate policy." *Fosbinder v. Cnty. of San Diego*, No. 24-cv-733-RSH-SBC, 2024 WL 4631275, at *10 (S.D. Cal. Oct. 30, 2024) (alterations in original; quoting *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012)).

***ii. Parties' Contentions***

Defendants seek dismissal of the fifth cause of action alleging *Monell* claims against KCSO. *See* (Doc. 32). Defendants argue that the SAC "does not allege facts showing deliberate indifference by [] any of the Defendant" and that "Plaintiff has failed to state any facts as to why the specific polices he cites are deficient." *Id.* at 5. Defendants argue that Plaintiff cites to various KCSO policies but "fails to state any facts showing the deficiency of any policy, procedure or practice that amounts to deliberate indifference to his constitutional rights." *Id.* at 6. Defendants assert that Plaintiff's citations to prior cases in the Eastern District of California refer only to "what he believes to be facts from those cases" and are insufficient to support the existence of a policy, custom, or practice under *Monell*. *Id.* at 6-7 (citing *Roberts v. County of Kern*, No.1:21-cv-00725-KJM-CDB, & *Garlick v. County of Kern*, No.1:13-cv-01051- LJO-JLT).

Defendants further argue that Plaintiff has not cited any specifics facts to support his claim that the County or KCSO's failure to train caused the asserted constitutional injuries. *Id.* at 8. Defendants contend that Plaintiff has not added any additional facts that plausibly show that the

County or KCSO ratified any alleged unconstitutional conduct, and that a failure to overrule a subordinate's actions is insufficient to support a ratification claim. *Id.* at 9.

In opposition Defendants' motion to dismiss, Plaintiff asserts that he has adequately pled a *Monell* claim because the SAC identifies specific operational failures, such as the use of force policy (F-0100), supervisory obligations (B-300), and warrant execution procedures (A-500). (Doc. 33 at 3). Plaintiff argues that his cited authority reveals violations similar to those at issue in the SAC. *Id.* at 3-4. Plaintiff references a statewide enforcement action by the California Attorney General and stipulated judgment requiring reforms as establishing relevant policymakers were on actual notice of deficiencies. *Id.* at 4-5. Plaintiff contends that the SAC identifies failures in training and repeated violations of the same type supporting deliberate indifference, as well as a causal chain indicating the violations alleged were not random but the result systemic failures. *Id.* at 5-6. Plaintiff asserts that ratification is sufficiently pled as the internal complaint was reviewed through the chain of command and no discipline was imposed, and that Defendants improperly seek a heightened pleading standard. *Id.* at 6-7.

***iii. Analysis***

Turning to the allegations specifically pled in the SAC, Plaintiff does not adequately allege facts setting forth any deficient practice, policy, or procedure, written or otherwise, by Defendants as the moving force behind his alleged constitutional injuries. Plaintiff merely advances conclusory recitations of the legal standard governing claims brought against municipalities pursuant to *Monell*. *See* (Doc. 29 at 10-11). While Plaintiff identifies by name and number certain policies of KCSO and the County of Kern, as discussed below, he does not allege any pattern of violations regarding these policies. *Id.* at 6-7.

As in the FAC, Plaintiff's summary reference to prior cases, investigations, and court documents is insufficient to establish the existence of a policy, custom, or practice under *Monell* that was the driving force of Plaintiff's constitutional injuries. Nor does Plaintiff purport to demonstrate in the SAC the existence of a relevant policy, custom, or practice through allegations of Defendants' prior conduct resulting in similar constitutional violations. "Without notice of similar past instances, county decisionmakers can hardly be said to have deliberately chosen to

implement the policy that causes violations of constitutional rights. Thus, [p]rior indicators cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Est. of Luna v. Orange Cnty. Sheriff's Dep't*, No. 8:23-cv-02180-DOC-KESX, 2024 WL 3218649, at *2 (C.D. Cal. June 20, 2024) (quotations and citations omitted; alterations in original). "That is, notice of a pattern of similar violations is required … they must be sufficiently similar to the present deprivation such that the County's failure to act to address the previous violations constitutes a deliberate decision to deny the plaintiff constitutional rights." *Id.*

Instead, to determine whether a history of decisions in previous lawsuits is "sufficient to plausibly allege a municipal policy, custom or practice at the pleading stage, the court considers all of the relevant factors, including (1) the number of prior lawsuits; (2) the allegations in those lawsuits, including the degree of similarity between the facts alleged in the prior lawsuits and the facts alleged in the action under consideration; (3) the timing of the prior lawsuits; (4) the disposition of the prior lawsuits; (5) the number and identity of defendants in the prior lawsuits, including whether the municipality itself was a defendant and whether any of the defendants in the prior lawsuits were the same as the defendants in the case under consideration; and (6) the size of the municipality in relation to the number and type of lawsuits." *Lesher v. City of Anderson*, No. 2:21-cv-00386-WBS-DMC, 2021 WL 5744691, at *4 (E.D. Cal. Dec. 2, 2021).

Plaintiff references *Roberts v. County of Kern*, No. 1:21-cv-00725-KJM-CDB, as an example of an earlier case with sufficiently related facts evidencing a pattern of violations. Plaintiff asserts generally, and without elaboration regarding any specifics, that in *Roberts*, deputies executing a warrant allegedly arrived in unmarked vehicles, wore body armor over plain clothes, detained individuals not named in the warrant, and seized personal property during the operation. (Doc. 29 at 7-8).

In *Roberts*, the operative complaint alleged that plain-clothed KCSO deputies were in two unmarked law enforcement vehicles in an alleyway behind a casino. Plaintiff Roberts called his girlfriend to pick him up from the alley and, as she pulled into the alley and Roberts began to walk towards her car, two deputies exited their unmarked vehicle and one pointed a rifle at Roberts, commanding him to stop and walk backwards towards him. After Roberts complied and informed

the deputy that he was carrying a fake toy gun in his pants, the deputy retrieved it and tossed it onto the ground. Thereafter, the deputy commanded Roberts to get on the ground and the plaintiff complied. The deputy then shot Roberts with his rifle in the upper thigh. Another deputy pointed a gun at the head of Sutton as she sat and observed from her car and commanded her to get out of the car and notified her that she was being detained. Roberts was transported to the hospital by ambulance and Sutton was detained at the scene for several hours, interrogated, and threatened by interrogating deputies that none of her property (including vehicle, purse, and cell phone) would be returned to her if she did not cooperate. The deputies informed Sutton that she would only receive her property if she signed a consent form for a search, including the downloading of all content on her phone, to which she signed. She did not receive her phone until over two weeks later. The complaint also alleged that, after the incident, KCSO deputies filed false reports. *See* (*Roberts*, Doc. 1).

The events in *Roberts* took place in Bakersfield, as did the events in the instant action. KCSO and the County of Kern are Defendants both here and in *Roberts*, though none of the individual Defendants here were parties in *Roberts*. The complaint in *Roberts* was filed in May 2021, relatively close in time and approximately four years before the complaint in this action. The Court takes judicial notice that the County of Kern has a sizeable population of approximately 927,000 as of the filing of this action.[2] The facts in *Roberts* appear reasonably analogous to the facts herein. It is alleged in both actions that the plaintiffs were not the subject of any warrant nor in the process of committing any crime. In both, officers in unmarked vehicles pointed rifles at and detained the plaintiffs. In both, the officers seized property, including digital storage technology. The cases appear most distinct in relation to the physical injuries at issue: in *Roberts*, a plaintiff

[2] United States Census Bureau, "QuickFacts – Kern County, California," *available at* https://www.census.gov/quickfacts/fact/table/kerncountycalifornia/PST045225 (last accessed July 31, 2026). The Court may take judicial notice of a fact that is not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Information available to the public and provided by a government agency meets the requirements for judicial notice set forth in Rule 201(b)(2). *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 (9th Cir. 2006) (holding that facts within public records are appropriate for judicial notice); *see also United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) (finding that courts "routinely take judicial notice of information contained on state and federal government websites").

was shot by an officer; here, the allegations relate to exacerbation of pre-existing injuries due to a wrist lock.

In *Roberts*, the defendants' motion for summary judgment was granted in part as to claims of excessive force and claims under the Bane Act against supervisory defendant Kern County Sheriff Donny Youngblood, and granted as to false arrest claims against another individual defendant, but otherwise denied, including as to the *Monell* claims. *See Roberts v. Cnty. of Kern*, No. 1:21-cv-00725-KJM-CDB, 2025 WL 709256, at *3 (E.D. Cal. Mar. 5, 2025). The parties ultimately settled the case prior to trial. *See* (*Roberts*, Doc. 82). Based on the similarities between the two actions, the Court finds that *Roberts* lends some support to the viability of a *Monell* claim here.

Plaintiff next cites *Garlick v. County of Kern*, 167 F. Supp. 3d 1117 (E.D. Cal. 2016), to further establish sufficiently related facts evidencing a pattern of violations. Plaintiff asserts that, in *Garlick*, deputies detained a third-party witness and seized a cellular device containing recordings of deputy conduct. Plaintiff does not identify a precise citation for the source of this assertion. Plaintiff argues that this involves the "same operational context present in Plaintiff's complaint: warrant execution, detention of non[-]suspects, and seizure of recording devices." (Doc. 29 at 9).

In *Garlick*, plaintiffs alleged that the decedent was lying on the lawn of a home in Bakersfield. A KCSO K-9 officer with police dog responded to the scene on information that an intoxicated individual was lying near the intersection of two streets. The deputy performed a "knuckle rub" on the individual (decedent), causing him to stir and speak unintelligibly. The deputy struck him with his baton, warned him that he would have his dog bite, then ordered the dog to bite, prompting the dog to bite decedent repeatedly. A second officer arrived and struck decedent with his baton repeatedly, after which two or three other officers arrived and began striking decedent and used holds and body weight to restrain decedent. Officers placed decedent in the "hogtie" position and continued to strike him with batons, then placed him in handcuffs and placed a "hobble" restraint around his feet. Decedent then began to asphyxiate and officers placed a "spit sock" over his head, after which decedent vomited into the spit sock. Officers continued to use

force until decedent stopped moving. Paramedics arrived but determined that decedent had died. *See* (*Garlick*, No. 1:13-cv-01051-LJO-JLT, Doc. 78).

The events in *Garlick* also took place in Bakersfield with KCSO and the County of Kern as defendants. None of the individual Defendants here were parties in *Garlick*. The initial complaint in *Garlick* was filed in July 2013, approximately 12 years before the instant action. The facts in *Garlick* do not appear reasonably analogous to the facts herein. In *Garlick*, the decedent was found lying on the lawn of a home, thus suggesting a possible infraction. The force alleged in *Garlick* was far greater than that alleged here and resulted in the death of the individual. Even if the Court credits Plaintiff's assertion that deputies detained a third-party witness and seized a cellular device containing records of deputy conduct, such a fact by itself, taken together with the other facts and circumstances of *Garlick*, does not support finding that *Garlick* evidences a pattern of violations. Additionally, in *Garlick*, the defendants' motion for summary judgment was granted in part, namely as to the *Monell* claims and not as to the claims of excessive force and certain other claims. *See* *Garlick*, 167 F. Supp. 3d at 1176. The parties ultimately settled the case prior to trial. *See* (*Garlick*, Docs. 236, 255). Accordingly, the Court finds that *Garlick* does not support Plaintiff's arguments in support of finding a cognizable *Monell* claim here.

Aside from Plaintiff's cursory references to a civil enforcement action by the California Attorney General alleged to have resulted in a stipulated judgment requiring reform as to use of force practices, Plaintiff cites no other cases in support of demonstrating a pattern of prior violations sufficient to maintain a *Monell* claim. As to the civil enforcement action and stipulated judgment, Plaintiff alleges only general details and does not identify or cite the action in question nor plead anything further beyond general and conclusory characterizations. *See* (Doc. 29 at 9-10).

As noted above, aside from the location of events in Bakersfield and that KCSO and the County of Kern are parties, the alleged actions of law enforcement in *Garlick* bear little resemblance to the facts herein. *Roberts*, however, presents a significantly closer set of facts. *See* *Lesher*, 2021 WL 5744691, at *5 ("With the possible exception of *Knighten*, the manner of arrest and use of force in the other referenced cases, except for the fact that a car was in some way involved, do not resemble those alleged here, and thus do not plausibly suggest an unlawful policy

or custom of excessive force or false arrest."). However, *Roberts* is the only such case cited by Plaintiff. "With regard to the number of prior cases, while the Ninth Circuit has suggested that one or two prior similar incidents, standing alone, are generally insufficient to prove the existence of an unconstitutional custom or practice, the law does not establish a precise number of previous lawsuits which must be alleged to overcome a motion to dismiss." *Id.* at *4 (citing, *inter alia*, *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989) (for the finding that one incident cannot establish a practice), & *Meehan v. Cnty. of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988) (for the finding that two incidents cannot establish a custom)).

Here, *Roberts* is the only case that presents sufficiently similar facts, but one such case by itself "does not plausibly suggest the existence of 'a widespread practice … so permanent and well settled as to constitute a custom or usage with the force of law.' '[R]andom acts' or 'isolated or sporadic incidents' are insufficient to prove the existence of an unconstitutional custom or practice." *Id.* at *5 (alterations in original; citing, *inter alia*, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988), & *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995), *as amended on denial of reh'g* (Jan. 12, 1996)).

Separately, Plaintiff does not allege facts regarding KCSO's training programs or policies; his allegations concern only the acts of individuals towards Plaintiff. Likewise, Plaintiff again fails to allege facts establishing a pattern of similar constitutional violations by untrained employees, or that the need for more or different training was so obvious, and the inadequacy so likely to result in violations of constitutional rights, that KCSO can reasonably be said to have been deliberately indifferent. *See Scarano v. Cnty. of Stanislaus*, No. 2:25-cv-00099-DJC-CKD, 2025 WL 2829174, at *3 (E.D. Cal. Oct. 6, 2025) ("The FAC offers no facts about these Defendants' training program or policies. The only factual allegations concern the acts of individual deputies towards Plaintiffs. Therefore, as Plaintiffs rely solely on the single incident involved in this case, they have not alleged the facts required to establish that these Defendants employ an inadequate training policy."); *see also Oyenik v. Corizon Health*, 696 Fed. App'x 792, 794 (9th Cir. 2017) (isolated or sporadic incidents are not sufficient to establish a policy or custom for *Monell* liability); *Segura v. City of La Mesa*, 647 F. Supp. 3d 926, 936 (S.D. Cal. 2022) ("Put more simply, Plaintiff must do more

than allege in a conclusory fashion that the County maintains an unwritten policy or custom of permitting the types of wrongs Plaintiff experienced."); *Duenas v. Cnty. of Imperial*, No. 14-cv-2460-L(KSC), 2015 WL 12656291, at *3-4 (S.D. Cal. Mar. 9, 2015) (dismissing *Monell* claim premised on allegations of an excessive force policy and county's failure to train and failure to investigate claims of excessive force).

Additionally, "[r]atification … generally requires more than acquiescence." *Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part, cert. dismissed in part sub nom. City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600 (2015). "To show ratification, a plaintiff must prove that the 'authorized policymakers approve[d] a subordinate's decision and the basis for it,'" which requires, "among other things, knowledge of the alleged constitutional violation." *Christie*, 176 F.3d at 1239 (quoting *Praprotnik*, 485 U.S. at 127). "To plead a claim under ratification theory, a plaintiff must include factual allegations about actions that policymakers took in connection with their 'approval' of the misconduct that would support an inference that they actually ratified the police officer's alleged misconduct. 'A mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim.'" *Nguyen v. Cnty. of Orange*, No. 8:22-cv-01693-DOC-ADS, 2023 WL 4682301, at *3 (C.D. Cal. June 8, 2023) (citing *Mitchell v. Cnty. of Contra Costa*, 600 F. Supp. 3d 1018, 1033 (N.D. Cal. 2022), & *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004)).

Plaintiff alleges in the SAC only that "internal affairs findings were approved through the County's review process without meaningful discipline." (Doc. 29 at 11). No other factual allegations are advanced in the complaint in support of ratification by any policymakers. *See Mitchell*, 600 F. Supp. 3d at 1032–33 ("These allegations are conclusory, and the amended complaint does not contain factual allegations to support the claim that unidentified 'authorized policy makers ... have approved of the conduct' of Brook and Emley and 'have made a deliberate choice to endorse [their] decisions.' Specifically, the amended complaint contains no allegations about any actions that policymakers took in connection with their 'approval' of the misconduct that would support an inference that they actually ratified Brook and Emley's alleged misconduct.").

Accordingly, the fifth cause of action will be dismissed.

**B. Leave to Amend**

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should be freely granted when justice so requires" as the purpose of the Rule is "to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). However, courts may, in their discretion, choose to decline leave to amend due to futility, bad faith, undue delay, prejudice to the opposing parties, dilatory motive or conduct, or a repeated failure to cure deficiencies by amendments. *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–893 (9th Cir. 2010). A court's discretion in denying leave to amend is particularly broad after plaintiff has already been afforded an opportunity to amend the complaint. *See Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016).

Here, Plaintiff previously was granted leave to amend. *See* (Doc. 28). Nevertheless, the Court will extend leave to amend one final time to permit Plaintiff to attempt to assert cognizable *Monell* claims.

An amended complaint supersedes the original complaint. *Lacey*, 693 F.3d at 927. Therefore, any first amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220. Plaintiff must replead all facts and claims that he wishes the Court to consider in his third amended complaint and may not reference any prior complaint.

**<u>Conclusion and Order</u>**

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss (Doc. 32) is GRANTED;
2. The fifth cause of action in the second amended complaint (Doc. 29) is DISMISSED with leave to amend;
3. Plaintiff is GRANTED leave to file a third amended complaint;
4. Plaintiff SHALL FILE any third amended complaint **within 30 days** of entry of this order; and
5. If Plaintiff declines to timely file a third amended complaint, the second amended complaint will remain the operative complaint.

6. The scheduling conference set for August 12, 2026, is VACATED, to be reset following the settling of the pleadings.

IT IS SO ORDERED.

Dated: **August 4, 2026**

UNITED STATES MAGISTRATE JUDGE